Kellie Ann C.,            Case No. 19-cv-13-KMM

    Plaintiff,

v.            **ORDER**

Andrew Saul,

    Defendant.

This matter is before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 18; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 21.) For the reasons set forth below, the Court finds that Kellie Ann C.'s (hereafter "Ms. C.") motion for summary judgment be DENIED and the Commissioner's motion for summary judgment be GRANTED.

## I.   Factual Background and ALJ Decision

Ms. C. first filed for supplemental security income and disability insurance benefits on April 15, 2015. (R. 12.) Her claims were denied initially and upon reconsideration. (*Id.*) She timely requested a hearing before Administrative Law Judge Micah Pharris, which was held on March 28, 2018. (*Id.*) On May 30, 2018, ALJ Pharris issued an unfavorable decision. (R. 12–28.)

### A.   ALJ Pharris's Decision

ALJ Thomas followed the five-step sequential evaluation process for determining whether Ms. C. is disabled. At step one, he determined that Ms. C. has not engaged in substantial gainful activity since December 31, 2013. (R. 14.) At step two, he determined that Ms. C. has several severe impairments: diabetes, migraine headaches, chronic fatigue, obesity, right carpal tunnel syndrome, mild degenerative disc disease of the cervical and thoracic spine, cognitive disorder not otherwise specified, major depressive disorder, and generalized anxiety disorder. (R. 15.)

ALJ Pharris specifically discussed Ms. C.'s fibromyalgia, which he found was not a medically determinable impairment. He explained "[i]n addition to a physician's diagnosis of fibromyalgia, in order to establish a medically determinable impairment, the medical records must contain evidence that supports the diagnosis." (*Id.*) He noted that SSR 12-2p describes one way that medical evidence could support a finding that fibromyalgia was a medically determinable impairment:

> First, Section II(A) states fibromyalgia is established as a medically determinable impairment if the individual has all three of the following: (1) a history of widespread pain (in all quadrants of the body) that has persisted for at least three months (the pain may fluctuate in intensity and may not always be present); (2) at least eleven positive tender points on physical examinations found bilaterally (on the left and right sides of the body, both above and below the waist); and (3) evidence that other disorders that could cause the symptoms or signs were excluded, as other physical and mental disorders may have symptoms or signs which are the same or similar to those resulting from fibromyalgia.

(*Id.*) ALJ Pharris then went on to explain that the medical record did not support a finding of fibromyalgia as a medically determinable impairment. He noted that Ms. C. received her March 2016 diagnosis for fibromyalgia from Dr. Mary Beran without examination of any tender points. (R. 15.) The other references to fibromyalgia in the medical record only call it "presumed" fibromyalgia, without additional diagnostic examinations. (*Id.*) In one record that ALJ Pharris highlights, a rheumatologist noted that Ms. C. did not have "adequate tender points" for a fibromyalgia diagnosis. (R. 666.)

ALJ Pharris next found that none of Ms. C.'s impairments or any combination of her impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. Finally, ALJ Pharris found that Ms. C. has the residual functional capacity to perform medium work with some limitations, including frequently handling and fingering with the right hand, and being limited to "simple routine tasks" with "occasional superficial [(rated no lower than an 8)] contact with supervisors, coworkers, and members of the public." (R. at 19.) ALJ Pharris determined that Ms. C. was unable to perform her past relevant work, but that there were other jobs in significant numbers in the national economy that she could

perform, such as industrial cleaner, laundry worker, and counter supply worker. (R. 27.)

## II. Analysis

Ms. C. challenges the ALJ's determination on three separate grounds. First, she argues that ALJ Pharris failed to consider the proper criteria when he determined that her fibromyalgia is not a medically determinable impairment. Second, Ms. C. argues that ALJ Pharris did not properly analyze the medical opinion evidence in the record. Finally, she asserts that the ALJ failed to consider her "stellar work history" when he assessed her credibility. After careful review, the Court determines that summary judgment in favor of the Commissioner is appropriate.

### A. Standard

In reviewing the Commissioner's denial of Ms. C.'s application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" and whether it results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts" from that decision. *See Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). However, the Court does not reverse the Commissioner's decision merely because substantial evidence also supports a contrary outcome or because the record might support a different conclusion. *Gann*, 864 F.3d at 950. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's conclusion is not among the reasonable positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

3

### B.  Fibromyalgia Criteria

Ms. C. argues that the ALJ committed error when he only considered the criteria for fibromyalgia as a medically determinable impairment under SSR 12-2p section II.A but ignored the criteria under section II.B.  Although the Court agrees with Ms. C., this error does not require remand because the outcome of the ALJ's analysis would have remained the same even absent the mistake.

SSR 12-2p section I states: "We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."  This makes clear that there are two different and separate methods for evaluating fibromyalgia as a medically determinable impairment.  However, the ALJ only evaluated Ms. C.'s condition using the criteria from section II.A.  The criteria from section II.B is different:

> B. *The 2010 ACR Preliminary Diagnostic Criteria.*  Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:
> 1.  A history of widespread pain (see section II.A.1.);
> 2.  Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
> 3.  Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see Section II.A.3.).

SSR 12-2p § II.B.  The ALJ's determination that Ms. C.'s fibromyalgia did not rise to the level of medically determinable impairment was focused mainly on the fact that tender point examinations did not support a diagnosis of fibromyalgia, which are a requirement of the section II.A analysis.  (R. 15.)  However, the criteria from section II.B do not require tender points to support a finding of fibromyalgia as a medically determinable impairment.

The Commissioner argues that because the criteria of SSR 12-2p II.A.1 and II.B.1 are the same (a history of widespread pain), and that the ALJ found

4

that Ms. C. did not meet the criteria of II.A, Ms. C. cannot demonstrate the criteria of section II.B. This argument is flawed, because the ALJ's step 2 finding is devoid of any discussion of the widespread pain requirement of II.A.1. Instead, the ALJ focused solely on the lack of tender points and the decision, therefore, is silent at step two on the issue of widespread pain.

However, the Court finds that remand is not required in this case because the "outcome of the case would be unchanged" even if the ALJ had performed the II.B analysis. *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (describing the harmless error analysis). The record here is devoid of evidence to support a finding that Ms. C. experienced a history of widespread pain. Indeed, Ms. C. fails to point to any specific evidence of widespread pain in her briefing, instead relying on conclusory statements. The Court's own review of the record makes clear that there would be little for Ms. C. rely upon. In order to demonstrate widespread pain, a claimant must provide evidence of pain in all quadrants of the body (right and left, both above and below the waist), with axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) that has persisted for at least three months. SSR 12-2p, §§ II.A.1, II.B.1. That threshold is not met.

Admittedly, there is some discussion of pain in different parts of Ms. C.'s body in her testimony to the ALJ, but nothing to indicate how long she has experienced the pain or just how widespread it is. (R. 63–64.) And in her own-self reported forms prepared for her disability application, Ms. C. rarely mentions pain. In her July 2015 disability report, she lists only headaches and neck stiffness. (R. 321.) In her function report from September 2015, Ms. C. focused solely on her mental struggles, and did not mention experiencing pain of any sort. (R. 355–62.) She describes similar difficulties in a disability report from November 2015, but again discusses no pain. (R. 366.) A later disability report from March 2016 mentions a diagnosis of fibromyalgia, but Ms. C. states only that it is the cause of her cognitive impairments—once again, any discussion of pain is absent. (R. 377.)

Physician records tell a similar story. Early treatment records focus largely on neurological symptoms and describe only in passing knee pain, neck

pain, or headaches—not widespread pain. (R. 425–50; 451–499, 500–518.) A July 2015 psychiatric progress note listed headaches and muscle tension as the only somatic symptoms Ms. C. was experiencing—though pain was an option that could have been circled, it was not. (R. 523.) Similar notes from September 2015, November 2015, February 2016, and March 2016 showed the same. (R. 565, 567, 718, 720.) After her fibromyalgia diagnosis, the evidence of widespread pain is still absent. In a March 2016 appointment with Dr. Beran, who wrote that the purpose of that visit was to discuss Ms. C.'s new fibromyalgia diagnosis, no pain of any sort was noted. (R. 599.) A follow up appointment with Dr. Beran later in March 2016 noted leg pain, but nothing widespread. (R. 613.)

Other physician notes describe pain but attribute it to something other than fibromyalgia. For example, notes from April 2016 note neck and back pain, which is possibly attributable to degenerative joint disease. (R. 618.) Foot pain in August 2016 is explained by a plantar fasciitis diagnosis. (R. 644.) Right hand pain in October 2016 is related to overuse or carpal-tunnel syndrome, and left finger pain around the same time is diagnosed as the result of a dog bite and subsequent fracture. (R. 673, 745–46.) Indeed, there appears to be no mention in the medical record of widespread or chronic pain until after Ms. C.'s fibromyalgia diagnosis, at which point such pain is largely described as something she has a "history" of. However, this is entirely inconsistent with the rest of the medical records. Though there is some history of axial skeletal pain, there is no report of pain in all quadrants of the body in the record whatsoever. Both are required to demonstrate a history of widespread pain. SSR 12-2p, §§ II.A.1, II.B.1.

Because the record does not support a finding that Ms. C.'s fibromyalgia is a medically determinable impairment under SSR 12-2p section II.B.1, the ALJ's failure to include it in his analysis is harmless error. *E.g.*, *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). The Commissioner is entitled to summary judgment on this issue.

## C. Opinion Evidence

Ms. C. next challenges the ALJ's consideration of the opinion evidence of the functional capacity evaluation and that of her physician, Dr. Beran. She argues that the ALJ improperly assigned little weight to both. The Court disagrees.

### 1. Functional Capacity Evaluation

Ms. C. underwent a three-hour functional capacity evaluation ("FCE") conducted by Ms. Anderson, an occupational therapist, on April 14, 2017. Ms. Anderson later discussed the results of the FCE in an opinion dated April 19, 2017. (R. 732–737.) She opined that Ms. C. had a fair tolerance to sitting, standing, walking, elevated work, and kneeling, and only limited tolerance to bending, rotating, and stair climbing. (R. 733.) She also found that Ms. C. had no ability to crouch, crawl, or perform "step stool climbing." (*Id.*) Ultimately, she recommended that Ms. C. be limited to sedentary level work, with the ability to change positions between sitting, standing, and walking as needed. (*Id.*) The ALJ gave this opinion little weight, explaining that a three hour FCE, according to vocational expert testimony, is the minimum accepted version of an FCE. (R. 26.) He further explained that Ms. Anderson's conclusions were inconsistent with the medical record as a whole, particularly the numerous physical examinations throughout the record that found Ms. C. had 5/5 strength, normal sensations, and was neurologically intact. (*See* R. 430 (examination in 2015), 667 (2016), 690 (2016), 728 (2017). He also noted that there were no justifications given to support the conclusion that Ms. C.'s made a good effort during the FCE. (R. 26.)

The Court finds that the ALJ did not commit error in assigning little weight to Ms. Anderson's opinion based on the FCE. There is substantial evidence in the record to suggest that the results of the FCE are inconsistent with the record as a whole. (*See, e.g.*, R. 430, 667, 690, 728, 745 (finding no neurological impairments and typical musculoskeletal strength); R. 781 (physician note from 2017 stating "She can work up to 7 hours per day); R. 812, 841, 846, 852, 864, 870 (occupational therapy notes showing consistent improvement in condition).) Additionally, Ms. Anderson provided no explanation to support her conclusions that Ms. C. gave "maximum, consistent effort" throughout the testing process. (R. 732.) And the vocational

7

expert testified that a three-hour FCE is the shortest evaluation considered valid, but that longer evaluations are generally more reliable. (R. 76–78.) In sum, there is substantial evidence to support the ALJ's finding that the FCE was contradicted by the record as a whole, and thus it should be given little weight.

### 2. Opinion of Treating Physician Mary Sue Beran, MD

Ms. C. also challenges the ALJ's assignment of weight to the opinion of Ms. C.'s physician, Mary Sue Beran, MD. Dr. Beran completed a checklist medical source statement in May 2017. In it, she indicated that Ms. C.'s fatigue and other symptoms "constantly" interfere with attention and concentration. (R. 740.) She also opined that Ms. C. would be incapable of even low stress jobs due to the increase in symptoms any level of stress would cause. (*Id.*) Dr. Beran noted that Ms. C. could only continuously sit or stand for one hour, that she would need to take unscheduled breaks every hour, and would be absent from work about three times per month. (R. 741–42.) She further opined that Ms. C. could occasionally lift and carry 10 pounds, bend and twist at the waist 5% of the time, and use her hands, fingers, and arms 66% of the time during a typical eight-hour workday. (R. 742.) The ALJ gave Dr. Beran's opinion little weight for several reasons. He explained that the opinion was based on the FCE, which he had already given little weight, as well as fibromyalgia, which he had found to be a non-medically determinable impairment. (R. 26.) He also found that Dr. Beran's opinion was inconsistent with her own treatment notes and the record as a whole. (*Id.*) Ms. C. argues that the ALJ improperly assigned this opinion little weight.

When evaluating medical opinions, the ALJ must consider several factors, including the nature and extent of the treatment relationship; the degree to which relevant evidence supports the physician's opinion; the consistency between the opinion and the record as a whole; any specialty the physician has in the area of the opinion; and any other factors that might support or contradict the physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[1] A treating physician's opinion is typically given controlling or substantial weight, but only when it is supported by

---

[1] 20 C.F.R. §§ 404.1527 and 416.927 were superseded by 20 C.F.R. §§ 404.1520c and 416.920c for claims filed on or after March 27, 2017. This case was filed prior to this date, so the old regulations apply.

medically acceptable techniques and is not inconsistent with substantial evidence in the record. *Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019). When a treating physician's opinion is conclusory or inconsistent with the record, it is appropriate to give it only limited weight. *Id.*

Against this backdrop, the Court concludes that the ALJ was justified in assigning little weight to Dr. Beran's treating source opinion. First, Dr. Beran's opinion was based on the FCE, which the ALJ discounted for valid reasons. Second, substantial evidence in the record contradicts Dr. Beran's opinion. Indeed, Dr. Beran's own treatment notes contradict her finding that Ms. C. is incapable of work—at one point, she notes that Ms. C. can work seven hours day, which is significantly more than what she opines in the medical source statement. (*Compare* R. 740–41 *with* R. 781.) Other physician notes indicate that Ms. C. was working 20-25 hours per week "with significant improvement." (R. 705.) Further, Ms. C. showed improvement with relatively conservative treatment. For example, though Dr. Beran estimates that Ms. C. is only capable of walking three city blocks (R. 740), Ms. C. later reports being able to take a 45-minute walk. (R. 864.) Indeed, while receiving treatment, Ms. C. indicated that she was doing better than she had done in "5–7 years." (R. 852.) Records also show that Ms. C.'s pain symptoms were improved by gabapentin. (R. 607, 613, 662, 697 ("feels the best she has in 5 years"), 704, 714.) Similarly, conservative treatments of Tylenol, heating pad, and aspercreme also improved her symptoms. (R. 787.) Where an impairment can be controlled by treatment or medication, it is not considered disabling. *See, e.g.*, *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *see also Hill v. Colvin*, 753 F.3d 798, 800–801 (8th Cir. 2014) (noting that improvement with treatment lends support to an ALJ's RFC finding).

Inconsistency between an opinion and the record as a whole is a correct reason to assign little weight to that opinion. *See, e.g.*, *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016); *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The record before the Court indicates significant inconsistency between the record as a whole and the opinion of Dr. Beran. Accordingly, the Court finds that the ALJ appropriately gave little weight to the opinion.

### D. Ms. C.'s Work History.

Finally, Ms. C. argues that the ALJ erred in his analysis of her subjective complaints when he failed to discuss her "stellar work history." The Court disagrees. The ALJ explicitly wrote that Ms. C. has "a strong work history." (R. 25.) However, he went on to explain that the objective evidence of the record, discussed above, was not consistent with Ms. C.'s allegations regarding the severity of her symptoms. (R. 26.) This, he noted, outweighed Ms. C.'s work history. (R. 25.) The Court finds that the ALJ's analysis of this issue was appropriate. A good work history is not outcome-determinative. *See, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017). Where the record demonstrates inconsistencies between a claimant's subjective complaints and the objective evidence of the record, the ALJ may properly discount a strong work history. *Id.* Furthermore, Courts should generally defer to an ALJ's evaluation of subjective complaints when that evaluation is supported by good reasons and substantial evidence. *E.g.*, *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014). Here, the ALJ clearly supported his finding that Ms. C.'s strong work history did not outweigh the objective evidence. (R. 25–26.) Because his finding is supported by substantial evidence, the Court will not disrupt it.

### ORDER

For all the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for summary judgment **(ECF No. 18)** is **DENIED**;
2. Defendant's motion for summary judgment **(ECF No. 21)** is **GRANTED**; and
3. This matter is dismissed with prejudice.

**Let Judgment be entered accordingly.**

Dated: January 10, 2020                  *s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge